**FILED**
**Jun 30, 2021**
**07:47 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **DIANNE MOORE,** | ) | **Docket No. 2018-06-1503** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BEACON TRANSPORT, LLC,** | ) | **State File No. 18493-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACCIDENT FUND INS. CO.,** | ) | **Judge Joshua Davis Baker** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

The Court held a compensation hearing on June 16, 2021, on Ms. Moore's claim for workers' compensation benefits. Beacon denied it owes any benefits, as her injury did not result from work. For the reasons below, the Court denies Ms. Moore's claim.

### Claim History

Ms. Moore worked for Beacon as a truck driver. On March 11, 2018, she arrived in Ardmore, Oklahoma to retrieve a loaded trailer. She felt "a twinge of pain" in her right knee when getting out of her seat and then experienced some numbness and tingling as she tried to walk it off. She thought it "could have been a couple things," including "all the walking . . . the day before," driving without cruise control because of heavy wind, or as she testified at the hearing, "It could have just been getting up out of the seat; I don't know."

After getting paperwork, she attempted to connect the loaded trailer to her truck. But the adjacent trailer was parked too close for her to crank the handle normally. Instead, she climbed underneath the nearby trailer to reach the handle, and while squatting in an unnatural position, she yanked sharply at least twice with the full force of her body. With the last tug, she felt immediate pain in her back followed by numbness that gradually spread from her chest down to both legs.

Suddenly numb from the chest down, Ms. Moore looked for help but saw no one. Because she left her phone in the truck cab, she dragged herself to her cab, where she reported the accident to Beacon and called 9-1-1. An ambulance transported her to the hospital, where a doctor diagnosed bilateral sciatica.

A couple of days later, Ms. Moore saw Dr. Joseph Cox, a neurosurgeon in Oklahoma City who specializes in "complex spine" treatment. Dr. Cox ordered MRIs of her cervical, thoracic, and lumbar spine. Upon reviewing the results, he determined she suffered from degenerative conditions at multiple levels of her spine but found no acute disc herniation or fractures to explain her sudden onset of symptoms. He also found no significant stenosis or compression. The thoracic MRI report, however, mentioned "non-specific" "signal intensity" of "uncertain etiology" that could indicate "demyelinating disease." Dr. Cox released Ms. Moore to return to Tennessee but suggested she "follow-up with her primary care physician and potentially a neurologist" once she returned.

After returning to Tennessee in late March, Ms. Moore continued experiencing bilateral numbness, as well as bladder incontinence and constipation. Beacon offered a panel of physicians, and she chose Dr. Garrison Strickland because he could provide treatment the soonest.

Dr. Strickland reviewed Ms. Moore's MRI films and determined her condition was unrelated to work. Instead, he said her symptoms likely resulted from transverse myelitis, and he suggested follow up with her primary care physician.

After her visit with Dr. Strickland, Beacon paid for Ms. Moore to see Dr. Darian Reddick for an examination. Dr. Reddick ordered another MRI, which results revealed "clear evidence of idiopathic transverse myelitis." Beacon denied her claim.[1]

In addition to these three doctors, Ms. Moore also saw Dr. James Anderson. Dr. Anderson completed a C-32 form where he related Ms. Moore's injury to her work accident, stating that the action of turning the crank handle resulted in "traumatizing" her spinal cord. He assigned Ms. Moore a two-percent impairment rating and permanent work restrictions. Beacon did not depose Dr. Anderson.

---

[1] Since Dr. Strickland's negative causation opinion resulted in the denial, Ms. Moore questioned his connections to the nurse case manager, Bronwen Whisenhunt, who arranged the appointment, and to the adjuster, Greg Hurd, who authorized it. Ms. Moore also questioned whether the insurance company had Dr. Strickland "on retainer." However, both Ms. Whisenhunt and Mr. Hurd credibly testified that the relationship with Dr. Strickland formed from simple necessity and efficient economy: Dr. Strickland could see her first, and Ms. Moore's condition needed immediate treatment. Ms. Moore conceded that Dr. Strickland was her last choice but the first available. Mr. Hurd denied retaining Dr. Strickland or any doctor. The Court finds no impropriety and rejects this argument.

The other doctors testified by deposition. Drs. Strickland and Reddick determined Ms. Moore's condition was unrelated to work, but Dr. Cox believed a relationship existed.

Dr. Strickland said Ms. Moore's condition likely occurred from transverse myelitis or some other "unknown" origin, including a spinal cord lesion. He found her condition unrelated to work. While he admitted she experienced some severe symptoms, he characterized the onset of symptoms while turning the crank under the truck as "incidental."

Dr. Reddick agreed with Dr. Strickland that Ms. Moore's condition was not work-related. He said that even if the handle were very heavy or had a lot of resistance, "there's no great way that this type of spinal cord injury that I could see would be related to any type of work-related incidence, although it did seem rather coincidental that it occurred while she was performing a work-related task."

In his deposition, Dr. Cox, who treated Ms. Moore immediately after the incident, felt Ms. Moore suffered a "spinal cord contusion" without continuing stenosis or compression on the spinal cord. He based this opinion on the sudden symptom onset and the rarity of transverse myelitis as a condition in general. Dr. Cox said transverse myelitis is typically "kind of a spontaneous thing that slowly gets worse" and deemed the diagnosis inapplicable to Ms. Moore.

Although Dr. Cox disagreed with Drs. Strickland and Reddick, he also said that their diagnosis was not "unreasonable." He felt, however, that the over two-month passage of time before examining Ms. Moore deprived them of having "the same appreciation for the sudden onset of symptoms." He further said Ms. Moore's spinal cord contusion did not require surgery, and he expected her symptoms to resolve over time, maybe in one or two years.

Dr. Cox also disagreed with Dr. Anderson's causation opinion. In the deposition, the parties discussed a diagnosis from Dr. Anderson of "thoracic HMP with edema," which suggested a herniated disc. Dr. Cox said he read about the disc bulges in the MRI reports but found no herniations that would cause Ms. Moore's symptoms.

**Findings of Fact and Conclusions of Law**

Ms. Moore bears the burden of proving entitlement to workers' compensation benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2020); *Panzarella v. Amazon.com, Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel May 16, 2018).

The viability of Ms. Moore's claim rests upon the expert medical testimony concerning causation. Proving medical causation requires an expert's "reasonable degree

3

of medical certainty that the employment contributed more than fifty percent" as to the cause of an injury. A reasonable degree of medical certainty means that in the medical expert's opinion it is more likely than not that the work caused the injury "considering all causes, as opposed to speculation or possibility." *See* Tenn. Code Ann. § 50-6-102(14)(B)-(D).

Here, three doctors gave depositions and one gave an opinion via form C-32. When a court receives competing testimony from physicians, it must determine which testimony to accept based on a variety of factors, including the qualifications of the physicians, the circumstances of their examination, the information available to each physician, and the importance of that information in the view of other experts. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). The evidence shows all four doctors have similar expertise and experience, and they reviewed basically the same records when forming opinions. Further, it appears all the doctors saw Ms. Moore only once. Therefore, the doctors stand on the same footing from the outset.

The law does, however, provide a rebuttable presumption of correctness to the causation opinion given by the physician chosen from the panel—in this case, Dr. Strickland. *See* Tenn. Code Ann. § 50-6-102(14)(E). Dr. Strickland said Ms. Moore's condition likely occurred from transverse myelitis or some other "unknown" origin including a spinal cord lesion. He found her condition unrelated to her work. This opinion is presumed correct.

Dr. Reddick agreed with Dr. Strickland's diagnosis; Dr. Anderson and Dr. Cox disagreed. In reviewing their opinions, the Court finds nothing that would overcome the presumption of correctness attributed to Dr. Strickland's opinion. Dr. Anderson gave his opinion via form C-32. Unfortunately, in a case with so many experts testifying, his opinion is not helpful because it lacks context. Regarding Dr. Cox, while he disagreed with Dr. Strickland's diagnosis, he admitted that diagnosis was not unreasonable. Thus, the doctors' differing opinions are simply that: differences of opinion.

Because the law requires the Court to presume Dr. Strickland's opinion correct, and the Court finds the countervailing opinions insufficient to overcome that presumption, the Court adopts Dr. Strickland's causation opinion. Dr. Strickland determined Ms. Moore's condition was unrelated to work, so the Court holds Ms. Moore failed to carry her burden of proof.

It is **ORDERED** as follows:

1. Ms. Moore's claim for benefits is denied and dismissed with prejudice.

2. Costs of $150.00 are assessed against Beacon under Tennessee Compilation Rules and Regulations 0800-02-21-.07, for which execution might issue as necessary.

3. Beacon shall file a completed Form SD-2 within five days after this order becomes final.

4. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED June 30, 2021.**


_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Deposition of Dr. Cox
2. Medical Exam and "TTD form" from Dr. Cox
3. Mercy Hospital "TTD letter"
4. Form C-32 from Dr. James P. Anderson
5. Form C-30A Dr. James P. Anderson
6. Curriculum Vitae from Dr. James P. Anderson
7. Physician Certification Form from Dr. James P. Anderson
8. Medical exam notes of Dr. James P. Anderson
9. Deposition of Dr. Strickland
10. Medical Records from Dr. Strickland
11. Mercy Hospital lab results
12. MRI reports
13. Genex Reports, 3 reports (collective exhibit)
14. Genex form c-33 case management notification
15. Genex Form c-34 case management closure form
16. Genex causation letter to Dr. Strickland
17. Genex Physician case closure letter
18. Employee's choice of physician forms (collective exhibit)
19. OSHA Forms 300 and 301 (collective exhibit)
20. First Report of Injury, EDI copy
21. Notice of Controversy
22. Notice of Denial
23. First Report of Payment
24. Final Report of Payment
25. Claims payment reports (collective)
26. Emails, signed revised HIPAA release form and Text Messages
27. Bureau's form for First Report of Injury
28. Ms. Moore's statement – undated
29. Medical records and nurse case management reports
30. Recorded statement – audio file
31. Email from Greg Hurd
32. Notice of Denial, Form C-23
33. Termination letter
34. Dr. Reddick's deposition transcript
35. Email to Greg Hurd dated 3/27/2018

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice filed January 14, 2019
3. Dispute Certification Notice filed October 23, 2020
4. Request for Expedited Hearing
5. Scheduling Hearing Order entered July 27, 2020
6. Motion to Compel
7. Order Granting Motion to Compel
8. Expedited Hearing Order entered June 27, 2019
9. Motion for Summary Judgment
10. Motion for Extension
11. Order Granting Extension entered August 19, 2019
12. Motion for Extension
13. Response to Motion for Extension
14. Order Granting Motion for Additional Time to Respond to Motion for Summary Judgment
15. Response to Motion for Summary Judgment
16. Notice of Filing Form C-32
17. Objection to the Use of Form C-32
18. Motion to Compel
19. Order Denying Motion to Amend the Expanse of Time the HIPPA Release Form Covers
20. Motion in Opposition of Deposition Date
21. Response to Motion for Extension
22. Employee's Reply to Employer's Response to Motion to Delay Deposition and Edit History of HIPPA
23. Employer's Reply to Employee's Motion Re HIPPA Release
24. Order Entered January 27, 2020
25. Motion for Investigation into Bad Faith by Accident Fund and Genex
26. Motion for Extension of Time to Respond to Motion for Investigation
27. Employer's Objection to Employee's Requests for Admission
28. Employee's Response to Employer's Objection to Requests for Admission
29. Order Denying Motion for Investigation and Motion to Deem Admitted
30. Motion to Compel
31. Notice of Intent to Use Form C-32 and C-30A
32. Notice of Filing Wage Statement
33. Motion for Protective Order
34. Response to Motion for Protective Order
35. Order Granting Motion for Protective Order
36. Order Cancelling Compensation Hearing
37. Order Setting Compensation Hearing
38. Motion to Continue

39. Order Granting Motion to Continue
40. Motion to Compel Testimony
41. Order Setting Compensation Hearing and Granting Motion to Compel Testimony
42. Motion to Exclude Employer's Late-Filed Exhibits

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 30, 2021.

| Name | Standard Mail | Via Fax | Via Email | Addresses |
|---|---|---|---|---|
| Dianne Moore, Employee | | | X | melow_d2000@yahoo.com |
| Cole Stinson, Employer's Attorney | | | X | cole.stinson@accidentfund.com |

_____

Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov

8



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*